JOHN GROVER, impleaded with JOHN D. VAN NORTWICK, *vs.* HOWELL HOPPOCK and RICHARD B. GREENWOOD.

1. An agreement of the payee with the principal, to extend the time of payment, will not discharge the surety from liability, unless there is some new consideration or additional security given.

2. The payee is not bound to notify the surety of non-payment by the principal, and an agreement with the principal not to notify him, will not be such a fraudulent concealment as will discharge the surety.

---

In error to the Middlesex Circuit Court.

This action was brought by Howell Hoppock and Richard B. Greenwood, partners, against John Grover and John D. Van Nortwick, to recover the amount of a joint and several promissory note, signed by the defendants.

The note was given for the original debt of Van Nortwick, it being understood that Grover only signed as

surety: Judgment by default was entered against Van Nortwick.

Grover set up two defences : first, that the plaintiffs had made an agreement with Van Nortwick, extending the time of payment, and thereby discharged him as surety; second, that he was discharged from liability, by reason of a fraudulent concealment of non-payment from him by the plaintiffs.

The case was tried at the Middlesex Circuit, before a jury, and on the trial the judge charged the jury that the defences set up were not sustained by the evidence. The jury rendered a verdict for the plaintiffs below.

The defendant, Grover, excepted to the charge of the court. A bill of exceptions was allowed and sealed, and the cause removed to this court by writ of error. The substance of the evidence and the charge complained of appear in the opinion delivered in this court.

The cause was argued at November Term, 1856, before the CHIEF JUSTICE, and Justices OGDEN, RYERSON, and VREDENBURGH.

*H. V. Speer*, for plaintiffs in error.

*F. T. Frelinghuysen*, for defendants.

The opinion of the court was delivered by

VREDENBURGH, J. This suit is brought to recover the amount of a joint and several promissory note, given by the defendants to the plaintiffs, for the original debt of Van Nortwick.

Judgment by default having been entered against Van Nortwick, two defences were set up at the trial by Grover.

*First.* That the plaintiffs, by an agreement with Van Nortwick, had extended the time of payment, and thereby discharged Grover.

Upon this point the judge charged that there was no sufficient consideration for the alleged agreement, because

the plaintiffs would not have received any additional security.

The only evidence in this respect was that of Mr. Cortleyou, who testified that, after Van Nortwick's failure, and about the time the suit was commenced, Grover asked Hoppock why he did not bring the matter to a close. Hoppock replied that Van Nortwick some time before came to him, and pleaded with him to let it lay, and said he would pay him out of the proceeds of the Runyon property, when he sold it, and on that account he agreed to let it lay.

Without expressing any opinion upon the question whether Grover can claim any rights as a mere surety in the face of his written contract, does this evidence show any such agreement on the part of the plaintiffs as for an instant to suspend their right of action?

It appears to me to prove no new consideration, nor even any part of a new contract. It was merely saying, by Van-Nortwick, if you will not sue me to-day, I will pay you to-morrow, and by Hoppock, if you will pay to-morrow, I will not sue you to-day. Van Nortwick's saying he would pay out of the proceeds of the Runyon property, was only telling where he expected to get the money from, which was a matter of no consideration to the plaintiffs. Van Nortwick's promise to pay to-morrow, if he was not sued to-day created no new consideration; it was only repeating verbally the legal language of the note. The note itself after due was a continuing promise to pay from day to day until it was actually paid. Hoppock's saying, I will not sue now, if you will pay hereafter, was but a mere act of favor, and not of legal consideration. It might as well be said that any person who waits for payment on an over-due note with the expectation of being paid, acts upon a new consideration.

*Secondly.* The defence contends that there was such a fraudulent agreement between the plaintiffs and Van

Nortwick to conceal the non-payment of the note from Grover as to discharge him.

Upon this point, the charge was, " that in a case like this, a delay of the creditor to sue might be so accompanied with fraud as to discharge the surety ; yet that there was not here sufficient evidence to make out such a case of fraudulent delay as would discharge the defendant.

Mere delay to sue or mere omission to notify the surety cannot be fraudulent. The fraud must consist of some overt act by the payee, leading the surety to believe that the principal debtor has paid, and thus inducing him not to pay himself or to inquire whether it has been paid or not.

Upon this point, the only evidence is that of Van Nortwick and Cortleyou. The former say that when he was asking for time, Hoppock asked him what the sureties would think about his letting the note lay. Van Nortwick replied, I should be sorry for them to know it, as they would not let it stand ; he would rather pay it himself. Cortleyou says, that in the conversation before mentioned, between Hoppock and Grover, Grover asked Hoppock why he did not notify him that the note was not paid. Hoppock replied that he had known Van Nortwick from a boy, and believed he was an honest man ; that Van Nortwick had agreed to pay him out of the Runyon property, and he let it lay on that account. Grover asked him why he did not bring it to a close. He replied, Van Nortwick kept putting him off; he said he had asked Van Nortwick what the sureties would say about its laying, if they knew it, and Van Nortwick said, don't tell them, for not a man would let it lay. .

It is insisted that this is some evidence of such a fraudulent collusion as should discharge the surety:    Supposing that the jury could legally infer that Hoppock agreed with Van Nortwick not to inform Grover of the non-payment of the note, it was no fraud whatever upon Grover. The plaintiffs were under no moral or legal obligation to furnish this information to Grover ; on the contrary, it

Grover v. Hoppock.

was Grover's duty to find out the plaintiffs, and either to pay the note, or see that it was paid. It was not the duty of the plaintiffs to interpose between the principal and surety, and to create alarm, and perhaps mischief, by a voluntary interference.

If the plaintiffs not giving notice could not be fraudulent, could his agreeing not to do it be so? Could his agreeing not to do what he was under no moral or legal obligation to do be a fraudulent concealment? The argument of the defence is based upon the assumption that such an agreement on the part of Hoppock was an agreement to conceal from Grover the non-payment of the note, whereas, to make the most of it, it was only an agreement not voluntarily to assume the office of an informer. An agreement not to inform, and an agreement to conceal, are two very different things.

It also appears, by the evidence, that after Van Nortwick had sold the Runyon property, he went with part of the proceeds to pay off this note, but it was finally agreed between him and the plaintiffs to appropriate them to other claims of the plaintiffs against Van Nortwick. This was all done without any communication with Grover. This is urged as some evidence of fraud. But Van Nortwick, when he paid the money, had the right to prescribe to what claim it should go, and it could be no fraud upon Grover. The whole difficulty arose from Grover's not performing his own promise; he had himself agreed to pay this note. If he had done so, as he could at any time have done, no difficulty could have arisen.

The charge of the court was right upon both points, and the judgment must be affirmed.

CITED *in Stryker* v. *Vanderbilt,* 3 *Dutch.* 73; *Thompson* v. *Bowne,* 10 *Vr.* 3.